Golden Nugget Atl. City LLC v Chan (2024 NY Slip Op 06540)

Golden Nugget Atl. City LLC v Chan

2024 NY Slip Op 06540

Decided on December 24, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 24, 2024

Before: Kern, J.P., Singh, Gesmer, Pitt-Burke, O'Neill Levy, JJ. 

Index No. 656657/20 Appeal No. 3313-3314 Case No. 2023-06806, 2024-03718 

[*1]Golden Nugget Atlantic City LLC, Respondent,
v
Wayne C. Chan, Appellant. 

PEM Law LLP, New York (Leonard S. Spinelli of counsel), for appellant.
Berlandi Nussbaum & Reitzas LLP, New York (John P. O'Brien of counsel), for respondent.

Judgment, Supreme Court, New York County (Arlene P. Bluth, J.), entered May 14, 2024, in favor of plaintiff and against defendant in the total amount of $369,356.16, unanimously affirmed, with costs. Appeal from order, same court and Justice, entered on or about October 4, 2023, which, to the extent appealed from as limited by the briefs, granted plaintiff's renewed motion for summary judgment on its first cause of action for breach of contract and dismissed defendant's affirmative defenses, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
Plaintiff alleges that in May 2014, defendant entered into a credit line agreement for the purpose of gambling at plaintiff's Atlantic City casino. According to plaintiff, defendant played various casino games using his credit line account and accrued an outstanding balance of $200,000. In November 2019, defendant delivered a counter check to plaintiff to repay the amount he owed, but that check was later dishonored by defendant's bank; despite plaintiff's due demand, defendant made no further attempts to pay the balance. Plaintiff then commenced this action to recover the debt.
In a prior appeal in this matter, this Court reversed a judgment in plaintiff's favor and dismissed its motion for summary judgment as premature on the grounds that defendant had an administrative patron complaint pending before the New Jersey Division of Gaming Enforcement (DGE) (Golden Nugget Atl. City LLC v Chan, 216 AD3d 16 [1st Dept 2023]). In that patron complaint, defendant sought to void his gambling debts on the ground that plaintiff's practice of marking, or "scribing," the dice at its craps tables had violated certain provisions of the New Jersey Casino Control Act (CCA). Defendant also maintained in the patron complaint that plaintiff violated the CCA by using dice that were not sufficiently transparent and failed to abide by the strict specifications for gaming dice set forth in the CCA (see Golden Nugget Atl. City LLC v Chan, 216 AD3d 16 [1st Dept 2023]). In dismissing the motion for summary judgment, this Court, relying on the New Jersey rule that designates the DGE with "primary jurisdiction" over violations of the CCA, authorized plaintiff to renew its motion either after six months or after the DGE ruled on defendant's patron complaint (Golden Nugget Atl. City, 216 AD3d at 19-20; see New Jersey Administrative Code 5:12-76 et seq).
In general, a court defers to an interpretation of legislation by an administrative agency to whom its enforcement is entrusted (see In re Adoption of N.J.A.C. 5:105-1.6(a)(1), 479 NJ Super 301, 317 [Super Ct App Div 2024]). The DGE investigated defendant's complaint and determined there were no violations, and defendant offers no reason for this Court to contravene the DGE's determination (see Chan v New Jersey Div. of Gaming Enforcement, 2024 WL 3354886 *2; 2024 NJ Super Unpub LEXIS 1503, *6 [Super Ct App Div, July 10, 2024, Docket No. A3589-21]). In its [*2]investigation, the DGE conducted interviews of the relevant parties, observed plaintiff's scribing methods, and used precise instruments to measure the same type of dice used by plaintiff on its gaming boards during the period in which defendant accrued his gambling debts. The DGE noted that plaintiff tested the dice before and after they were scribed, and found that they played identically. In these circumstances, the DGE rationally determined that the scribing, which was a common practice used by gaming operators for security purposes, did not violate the gaming regulations that govern dice specifications (see New Jersey Administrative Code §§ 13:69E-1.15, 13:69E-1.16).
Similarly, upon observation, the DGE found the dice at issue to be transparent, and upon testing, found the dice to be properly weighted and nonmagnetic, thus addressing defendant's speculations that opaque dice could conceal foreign or magnetic material that could affect the dice performance. Moreover, the dice are made by licensed manufacturers; as per regulations, they are inspected by DGE and casino personnel before being put into play, with the custody of the dice strictly accounted for (see New Jersey Administrative Code §§ 13:69E-1.20; 13:69E-1.16[a], [g], [h]).
We reject defendant's argument that DGE failed to test the actual dice involved in the 2019 craps games he participated in and to examine the records the casino was obligated to maintain in connection with the games played at its gaming facility. As plaintiff aptly notes, a regulation requires casinos to destroy dice shortly after their limited game life of 24 hours or less and this regulation makes inspection of the actual dice impossible where, as here, defendant offers no evidence that he immediately reported any of the alleged violations (see New Jersey Administrative Code § 13:69E-1.16[l]).
As for the casino's records covering each of the games in question, defendant's complaints covered "numerous" unspecified games occurring on "various" dates and involving "various" tables. However, defendant offers no basis, apart from speculation, to conclude that gaming violations occurred in these unspecified games. To the extent defendant argues that the casino's records and information as to the challenged games would be, at least in part, within the casino's exclusive knowledge or control, the record demonstrates that defendant had a reasonable opportunity over three years to seek discovery, yet never served a single demand (see Singh v New York Hous. Auth., 177 AD3d 475, 476 [1st Dept 2019]).
As to the renewed motion for summary judgment, plaintiff established its prima facie entitlement to relief, as there are no disputed facts regarding its claims. Plaintiff's evidence showed that defendant admitted entering into a credit line agreement whereby he received a draw of funds for gambling at plaintiff's casino; that defendant incurred gambling losses; that plaintiff made a demand for repayment and the defendant [*3]drafted two checks in the amount owed and delivered them to the casino, but later stopped payment on the checks, maintaining that the dice used by plaintiff were not compliant with regulatory requirements and that his losses could be voided. In opposition, plaintiff offers no evidence that would raise a triable issue of fact sufficient to defeat summary judgment. Furthermore, defendant's affirmative defenses, which are founded upon the casino's alleged violations of the CCA, have been controverted by the DGE determination and therefore fail to raise a triable issue of fact.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 24, 2024